Helen J. PADEN (Kerns), Appellant,

v.

David S. KERNS, Jr., Respondent.

No. WD 71182.

Missouri Court of Appeals,
Western District.

Aug. 17, 2010.

William C. Votypka, for Appellant.

James A. Nadolski, for Respondent.

Before Division Three: JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

Helen Paden ("Mother") appeals from a judgment modifying the decree dissolving her marriage to David Kerns ("Father") by terminating his child support obligation based upon the emancipation of the couple's two children. For the following reasons, the judgment is reversed, and the cause is remanded for further proceedings.

The marriage between Mother and Father was dissolved by the Circuit Court of Buchanan County on September 19, 1991. That decree of dissolution was modified in 1993 to place sole physical custody of the couple's two sons, Bo Kerns and Joseph Kerns, with Mother, and Father was ordered to pay $465.00 per month in child support. In 2004, Father's child support obligation was increased by the court to $700.00 per month. On October 2, 2008, Father filed a motion to have the children declared emancipated.

At the evidentiary hearing on Father's motion, in addition to stipulating that Bo was indeed emancipated, the following facts were stipulated:

Mother's attorney: Joseph Kerns is 19 years old. He graduated from high school in 2008, in May of 2008.

Father's attorney: January.

Mother's attorney: January of 2008. He enrolled in college at Metropolitan Community College at Longview by October 1st of that year. He enrolled in 12 hours of classes. And there was one particular class in which he had an issue with his grades. And the instructor had withdrawn him from the class to sort of protect his GPA and assigned a W grade as opposed to an F. Joseph is now currently enrolled in over 12 hours of classes for the spring semester of 2009. And I believe that that is the—those would be the undisputed facts pertaining to the education portion of this.

The Court: All right. Let's talk about—finish with that. Mr. Nadolski, anything you want to add to it.

Father's attorney: No, Your Honor, other than the fact that there was some issues about notice and all that. But I think what Mr. Wortman cited on the record is probably the most relevant information for your consideration under that statute, yes.

In addition, Father submitted a print out of Joseph's grades for the Fall semester listing a "W" as his grade for Introductory

Algebra, and Mother submitted a letter from the Associate Dean of Student Development for the college to Joseph that read:

> This letter is regarding our decision to withdraw you from the Mathematics 40 class in which you were enrolled Fall 2008.
>
> The date at which we withdrew you was past the date for assessment, meaning that an automatic grade of "W" was assigned. The instructor has the right to change the "W" to an "F" if he/she so chooses. Your instructor chose not to do so since Fall 2008 was your first semester here and the "F" would adverse [sic] your Grade Point Average. It was an attempt on our part to give you a fresh start next semester.
>
> The reason for the withdrawal boiled down to the obvious reality for both of us that you were not academically prepared for MATH 40 curriculum [sic]. You had shown on your last test that you had not mastered factoring and the class was proceeding to the next level, but mastering factoring was essential for moving on.
>
> I wish we could have detected the issue earlier but we did not. You were technically enrolled full time at the college and remained so for the semester, since the W is a grade. I trust this is understandable to you, and if you or either or both of your parents have questions, they call can [sic].

Following the evidentiary hearing, the circuit court entered its judgment declaring that both children were emancipated. With regard to Joseph, the court found that, while he had graduated from high school and enrolled in twelve hours of college classes the following Fall, Joseph had withdrawn from a three hour class and, therefore, only completed nine hours of coursework. For this reason, the court concluded that Joseph did not satisfy the requirements of § 452.340.5[1] to avoid becoming emancipated. Mother brings three points on appeal from that judgment.

As in any court tried case, we must apply the standard of review established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Peine v. Peine*, 200 S.W.3d 567, 571 (Mo.App. W.D.2006). "The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* "In our review, we are to defer to the trial court's determinations of credibility, viewing the evidence in the light most favorable to the court's judgment and disregarding all contrary evidence and inferences." *Scruggs v. Scruggs*, 161 S.W.3d 383, 388 (Mo.App. W.D.2005). Questions of law, on the other hand, are reviewed *de novo. In re Marriage of Maggi*, 244 S.W.3d 274, 277 (Mo.App. S.D.2008).

As applicable to this case, Section 452.340.5 states:

> If when a child reaches eighteen, ... [i]f the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school ... and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including summer semester, at an institution of vocational or higher education and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-one, whichever first occurs....

The statute goes on to provide that "[w]hen enrolled in at least twelve credit hours, if the child receives failing grades in

---

1. All statutory references are to RSMo Cum. Supp.2007 unless otherwise noted.

half or more of his or her courseload in any one semester, payment of child support may be terminated and shall not be eligible for reinstatement." § 452.340.5.[2] "Missouri courts liberally construe section 452.340.5 to be consistent with the public policy of promoting the pursuit of higher education." *Waddington v. Cox*, 247 S.W.3d 567, 571 (Mo.App. E.D.2008).

In her first point, Mother claims that the trial court's finding that Joseph withdrew himself from the math class was not supported by substantial evidence and/or was against the weight of the evidence. Mother notes that both the stipulated facts and the letter from the college reflect that Joseph was involuntarily withdrawn from the class by his teacher and the college.

■ The parties stipulated that "the instructor had withdrawn [Joseph] from the class." The letter from the college, admitted without objection, further explains how the college and the instructor decided to withdraw Joseph from the course after the date for assessment and that the instructor had the option of giving him an "F" or a "W" as a result. Aside from stipulating that Joseph was withdrawn from the class, Father did not present any evidence that would support a finding that Joseph voluntarily withdrew from the class, and Father did not offer any evidence, cross-examination, or testimony challenging the credibility of the letter from the college. Accord-

ingly, the trial court's finding that Joseph voluntarily withdrew himself from the class is not supported by substantial evidence and is against the weight of the evidence.

Since that erroneous determination does not, in and of itself, require reversal, we next turn to Mother's third point on appeal. Mother claims that the trial court misapplied the law in treating the "W" received by Joseph after being involuntarily withdrawn from the class differently than if he had received an "F" from the instructor for the purposes of § 452.340.5. The trial court specifically found that Joseph's withdrawal did not constitute failing the class "under any category of failing."

■ Where a student voluntarily withdraws from a class prior to its completion, he or she clearly fails to meet the requirements of the statute that the student complete the class. On the other hand, where a child receives a failing grade in a course, provided the child does not fail half or more of his or her classes, the child is deemed to satisfy the requirements of § 452.340.5.[3]

Thus, in the case at bar, had Joseph voluntarily chosen to withdraw from the class prior to the date of evaluation (a/k/a the deadline for voluntary withdrawal), he would clearly have failed to satisfy the

---

**2.** Father has argued at trial and on appeal that Joseph cannot be deemed to have completed 12 hours because he did not end up with credit for twelve credit hours for the semester. From the transcript, it appears the trial court shared that view. Father relies extensively on *Lombardo v. Lombardo*, 35 S.W.3d 386, 391 (Mo.App. W.D.2000), wherein this Court held that, in order to "complete" 12 hours of credit under § 452.340.5, a child must receive 12 credit hours for their coursework. However, subsequent to *Lombardo*, in 2007, § 452.340.5 was amended to provide that "[w]hen enrolled in at least twelve credit hours, if the child receives failing grades in

half or more of his or her courseload in any one semester, payment of child support may be terminated and shall not be eligible for reinstatement." § 452.340.5. Since credit hours are not awarded for failed classes, *Lombardo* was effectively overruled and does not apply to any coursework after the amendment went into effect. *See In re Marriage of Maggi*, 244 S.W.3d 274, 278 (Mo.App. S.D.2008).

**3.** Obviously, a class can be successfully failed without attending class, doing the work, or taking exams.

twelve hour requirement of § 452.340.5. On the other hand, having been involuntarily withdrawn from the class at a later date, had his instructor elected to give him an "F", Joseph would clearly have satisfied the statutory requirement under the provisions of the most recent amendment since he would have received a failing grade in the class. We are left to determine the legal effect of the college's assignment of a "W" grade designation after Joseph had been involuntarily withdrawn from the class and whether the trial court erroneously concluded that it was not a failing grade.

Under the specific facts of this case, where the college treated an involuntary withdrawal of a student from the class as the functional equivalent of an "F" and the instructor had the choice of assigning a grade of "W" or "F" to the student, the "W" received by Joseph should be treated no differently than if he had received an "F" in the class for the purposes of § 452.340.5. The college effectively informed Joseph that he had already failed the course and that it no longer wanted him present in the classroom. To allow the instructor's act of leniency in deciding to spare Joseph's grade point average from an "F" to unknowingly and automatically trigger Joseph's emancipation would serve no rational purpose. Joseph should be in no different position with regard to emancipation than another student who was involuntarily withdrawn from a class but was assigned an "F" by the professor. The "W" received by Joseph was a "failing grade" for the purposes of § 452.340.5.

For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.[4]

All concur.

---

4. Having reached this conclusion we need not consider Mother's second point on appeal wherein she claims Joseph should not have been deemed emancipated because the record establishes that manifest circumstances beyond Joseph's control prevented him from completing 12 hours worth of classes.